# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NICOLE LORING, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KWAL-HOWELS, INC., and )<br>PROFESSIONAL PAINT & COATINGS, INC., )<br>)<br>Defendants. )<br>_____) | Case No. 12-2378-JAR |

## **MEMORANDUM AND ORDER**

Plaintiff filed this action alleging violations under Title VII of the Civil Rights Act of 1964,[1] and the Equal Pay Act.[2] Before the Court is Defendant KWAL-Howells' objection (Doc. 37) to Plaintiff's Third Motion for Entry of Judgment by Default Against Defendant KWAL-Howells, Inc. (Doc. 30).[3] As described more fully below, Defendant KWAL-Howels' objection to entry of Plaintiff's default judgment is overruled.

**I.    Background**

Plaintiff, a former employee of KWAL-Howels, Inc. ("KWAL"), filed this lawsuit on June 15, 2012, against Defendants KWAL and Professional Paint & Coatings, Inc. ("PPC").[4] The docket shows that summonses were returned executed upon both Defendants on October 9,

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] 29 U.S.C. § 201 *et seq.*

[3] The Court notes that the Docket Sheet and Complaint in this case refer to Defendant as "KWAL-Howels," while subsequent pleadings use "KWAL-Howells."

[4] Doc. 1.

2012.[5] The Notice of Service of Summons and Complaint filed with regard to Defendant KWAL attaches a Proof of Service stating that the summons was served on "The Corporation Company, Inc. (via USPS Certified Mail), who is designated by law to accept service of process on behalf of [KWAL] on October 9, 2012."[6] Plaintiff alleges that KWAL was served on October 9, 2012 by certified mail through its registered agent listed with the Kansas Secretary of State. Pursuant to Fed. R. Civ. P. 12(a), Defendants KWAL and PPC were required to file a responsive pleading on or before October 30, 2012.[7] Defendant PPC appeared and filed its Answer on October 30, 2012. Defendant KWAL did not file a responsive pleading by the October 30, 2012 deadline.

On November 30, 2012, Plaintiff filed a Motion for Entry of Judgment by Default Against Defendant KWAL.[8] The Court entered a Memorandum and Order denying the motion for default judgment, finding that: 1) Plaintiff failed to comply with the two-step process contemplated by Fed. R. Civ. P. 55; 2) Plaintiff's proof of service appeared to be deficient; and 3) default judgment should be denied against a defendant that has a closely related defense with the non-defaulting defendant.[9] After the Court entered its Memorandum and Order, Plaintiff resolved her claims against PPC. PPC withdrew its opposition to Plaintiff's motion for default judgment and Plaintiff's claims against PPC were dismissed with prejudice.[10]

Plaintiff filed her Second Motion for Default Judgment against Defendant KWAL on

---

[5]Doc. 3 and 4.

[6]Doc. 4-1 at 2.

[7]Fed. R. Civ. P. 12(a)(1)(A)(I).

[8]Doc. 10.

[9]Doc. 20.

[10]Docs. 22, 24.

June 6, 2013, and the Court denied the motion without prejudice on July 3, 2013, for failure to cure the remaining two deficiencies noted in the previous Memorandum and Order.[11]

Plaintiff filed her Application for Clerks Entry of Default on July 13, 2013, and the Clerk entered default on July 16, 2013.[12] Plaintiff filed her Third Motion for Default Judgment on August 1, 2013.[13] The Court set a damages hearing for September 6, 2013, and mailed a copy of the notice to Defendant KWAL on August 27, 2013.[14]

The Court held the evidentiary hearing on September 6, 2013, and Defendant KWAL failed to appear. After hearing testimony and receiving evidence at the hearing, the Court granted Plaintiff's Third Motion for Default Judgment, determined damages, and requested Plaintiff's counsel to submit a proposed Default Judgment Order.[15] On September 9, 2013, counsel entered an appearance for Defendant KWAL, and filed a Motion for Extension of Time to File Answer, Memorandum in Opposition to Plaintiff's Third Motion for Default Judgment and/or Motion to Set Aside any Default Judgment Entered by this Court.[16] The Court granted KWAL leave to respond to Plaintiff's Third Motion for Default Judgment, and denied the remainder of its motion.[17] KWAL has now filed its response.[18] The matter is fully briefed and

---

[11]Docs. 25, 26.

[12]Docs. 28, 29.

[13]Doc. 30.

[14]Doc. 31.

[15]Doc. 33.

[16]Docs. 34, 35.

[17]Doc. 36.

[18]Doc. 37.

the Court is prepared to rule on KWAL's objection to entry of default judgment. For the reasons set forth in detail below, the Court overrules KWAL's objection.

**II.    Facts**

Plaintiff's claims stemmed from her employment at KWAL's Overland Park, Kansas store, which sold paint, coatings, and other items. KWAL sold the store to PPC in June 2011 before Plaintiff filed this lawsuit. On October 9, 2012, KWAL was served with the Summons and Complaint through the Company's registered agent, CT Corporation. CT Corporation notified The Comex Group and Lockton Insurance of the service. The Comex Group is the parent company of KWAL and handles litigation on behalf of KWAL and other subsidiaries. Lockton Insurance manages a portfolio of insurance policies for The Comex Group. Because Lockton had received notice of the Complaint, The Comex Group understood that Lockton would notify Chartis Insurance (now AIG), the insurance company through which KWAL maintained Employment Practices Liability Insurance.

The Comex Group believed that it had completed its obligation in obtaining counsel for the lawsuit, expecting that AIG would assign a claims analyst to the case, and retain defense counsel. Following the service of the Complaint and Lockton's notification of the same, The Comex Group heard nothing further regarding the case for almost a year, until August 28, 2013. KWAL asserts that The Comex Group believed this was normal as it would typically only receive periodic updates as cases progressed and because the store where Plaintiff worked had long since closed.[19]

Upon receiving the Notice of Hearing from the Court through its registered agent on

---

[19]The Court is unsure as to what relevance the fact that the store is closed would have on KWAL's updates on the progress of the case.

August 28, 2013, John O'Toole, VP of Corporate and Legal Affairs of The Comex Group, forwarded the notice to his paralegal Joanne Edmunds, who had also received the Notice of Hearing, and Lockton. O'Toole inquired as to whether a claims analyst and defense counsel had been assigned. On August 29, 2013, he still could not identify any claims analyst or defense counsel assigned to the claim. On August 29, 2013, O'Toole reached out to an adjuster at AIG, James Berkson, with whom O'Toole was working on other matters to find out who was assigned to Plaintiff's case. Berkson responded by sending an email with a carbon copy to the assigned adjuster, Erica Schierman.

On the morning of Tuesday, September 3, 2013, after the long Labor Day holiday weekend, O'Toole followed up with Schierman to determine who had been assigned as defense counsel for KWAL on Plaintiff's case. On the afternoon of September 3, 2013, O'Toole asked Edmunds to confirm with AIG that defense counsel had been retained to defend KWAL in this case. O'Toole also asked Edmunds to contact defense counsel to appear for the scheduled hearing and defend KWAL in this case. Edmunds attempted to follow up with Schierman in that regard but received an out of office auto-reply notification. Also on the afternoon of September 3, 2013, O'Toole reached out to Berkson asking him to confirm that AIG had assigned defense counsel to defend KWAL in this case. Berkson responded to O'Toole's email at around 10:00 p.m. that night indicating he believed The Comex Group needed to retain counsel for the defense of this case. Berkson also advised that he would be out of the office beginning the afternoon of September 4, 2013, through September 9, 2013.

On September 3, 2013, O'Toole asked Edmunds to contact Littler Mendelson in Kansas City to appear at the September 6th hearing. Edmunds was only in the office on September 4th

5

for a short while before she had to leave.[20] Unfortunately, Edmunds was out of the office for the funeral of a family member on the afternoon of September 4th and all day September 5th, and did not return to the office until September 6th—the morning of the hearing.

As a result of the confusion regarding the claims analyst assigned to the case and whether defense counsel had been retained, and due to Edmunds's family emergency, neither The Comex Group nor AIG retained counsel to represent KWAL at the hearing before this Court on Friday, September 6, 2013. O'Toole stated that "had [he] known that [they] were not represented in the lawsuit [he] would have taken immediate action to secure counsel."[21]

On Monday, September 9, 2013, counsel was retained to represent KWAL in this matter, and on that same day, entered an appearance and moved for leave to respond to Plaintiff's Third Motion for Default Judgment, file an Answer out of time, and/or set aside the Clerk's Entry of Default against KWAL.

## III. Discussion

### A. Request to File Answer Out of Time

KWAL asks the Court to grant it leave to file its Answer out of time, claiming that its failure to file a timely Answer was due to excusable neglect. Pursuant to Fed. R. Civ. P. 6(b)(1)(B), a court may, for good cause shown, excuse a party's failure to act within the prescribed time "if the party failed to act because of excusable neglect."[22] In determining whether neglect is excusable, the Court considers:

---

[20]Doc. 37–1 at 4.

[21]*Id.* at 5.

[22]Fed. R. Civ. P. 6(b)(1)(B).

6

> 1) the danger of prejudice to the opposing party, 2) the length of
> delay caused by the neglect and its impact on judicial proceedings,
> 3) the reason for delay, and whether it was in the reasonable
> control of the moving party, and 4) the existence of good faith on
> the part of the moving party.[23]

Excusable neglect is an "elastic concept" not strictly limited to actions and omissions outside of the control of the party seeking to file out of time.[24]

### 1. Prejudice to Plaintiff

KWAL argues that Plaintiff will not be prejudiced because Plaintiff has not engaged in discovery, and mediated the case with PPC without substantively litigating the case. As such, KWAL argues, the lawsuit remains a "clean slate" and allowing KWAL to present a defense will not prejudice Plaintiff. The Court disagrees that Plaintiff will not be prejudiced. This case has been pending for over a year. A Scheduling Order was entered in this case setting deadlines for mediation, discovery and dispositive motions. Those deadlines have all passed. Plaintiff has filed various motions in this case and appeared at the evidentiary hearing and testified as to her damages. All calculations, including attorneys' fees, were done as of the date of the hearing. Requiring Plaintiff to start over with a "clean slate" would be prejudicial.

### 2. Length of Delay and Impact on Judicial Proceedings

KWAL again argues that because of the lack of discovery in the case and Plaintiff's "failure to sufficiently advance the litigation ball," the delay has caused no meaningful impact on the proceedings. KWAL argues that little to no progress has been made in the case, therefore the delay will have minimal, if any, impact on the judicial proceedings. Again, the Court disagrees.

---

[23]*Hamilton v. Water Whole Intern. Corp.*, 302 Fed. App'x 789, 798 (10th Cir. 2008) (citing *U.S. v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004)).

[24]*Pioneer Inv. Servs. v. Brunswick Assoc.*, 507 U.S. 380, 392 (1993).

KWAL's answer in this case was due on October 30, 2012. KWAL entered its appearance on September 9, 2013, and filed its Motion for Extension of Time to File Answer on that same date, over ten months after the deadline to file an answer. There were thirty-three docket entries prior to KWAL entering its appearance, including an Initial Order Regarding Planning and Scheduling, a Scheduling Order and two Memorandum and Orders. Most importantly, the Court held an evidentiary hearing in this case. The lengthy delay and activity in the case weighs in favor of denial of leave to file out of time.

### 3. Reason for the Delay and Whether it was in KWAL's Control

The reason for the delay is an important, if not the most important, factor in the analysis.[25] KWAL argues that its delay was not the result of "poor lawyering," but rather resulted from a good faith, but mistaken, belief by its parent company (The Comex Group) that its insurance carrier would retain counsel and manage the defense of the lawsuit upon notification. Thus, when The Comex Group notified its carrier and confirmed that its insurance portfolio manager had notice of the lawsuit, it believed it had taken all action necessary to defend KWAL in the lawsuit.

KWAL cites *Akright v. Flex Financial Holding Co.*, as support for its argument that notifying its insurance carrier was sufficient.[26] In *Akright*, defendant's answer was due February 12, and counsel entered its appearance and sought leave to file its answer out of time on March 14, a little over a month after the deadline.[27] The court had not held an evidentiary

---

[25] *Hamilton*, 302 Fed. App'x at 798 (citing *Torres*, 372 F.3d at 1163).

[26] No. 08-2037-CM-GLR, 2008 WL 1958345 (D. Kan. May 2, 2008).

[27] *Id.* at *1.

8

hearing on damages nor granted the pending motion for default judgment like the Court did in this case. And, in *Akright*, "[a]fter learning of the Clerk's Entry of Default, [defendant] immediately contacted an attorney."[28] The court in *Akright* also noted that the case was in its early stages, no Scheduling Order had been entered and few case deadlines had passed.[29]

The Court finds that *Akright* is distinguishable from the instant case. The Court may have reached a different decision if KWAL had "immediately contacted an attorney" when it received notice on August 28, 2013, of this Court's hearing to determine damages on Plaintiff's motion for default judgment. There is no indication that anyone made any effort to find out why there were no status reports or updates on the case for almost a year, and no attempt was made to contact the Court or Plaintiff's counsel. A phone call to the Court or the Clerk's Office or an online search would have instantly confirmed that counsel had not entered an appearance for KWAL—a conclusion that would appear evident from notice of a hearing on damages on Plaintiff's motion for default judgment. Instead, O'Toole launched an in-house investigation and ultimately discovered on September 3, 2013, that KWAL needed to secure counsel on its own. The task of actually securing counsel was then delegated to Edmunds, who was at work on the morning of September 4th, but then left for a family member's funeral and returned on the morning of the hearing.

### 4. Whether KWAL Acted in Good Faith

The Court does not find any evidence that KWAL acted in bad faith. On the other hand,

---

[28]*Id.*

[29]*Id.* at *2.

KWAL has not exhibited good faith either. Our courts have found this factor to be neutral where the movant has not shown an offer to reimburse the non-moving party for its costs and attorneys' fees attributable to preparation and advancement of its motion for default judgment.[30] This factor is neutral. Even if the Court were to find that KWAL acted in good faith, this factor does not outweigh the remaining factors weighing against a finding of excusable neglect.

B.   **Request to Set Aside Clerk's Entry of Default and Deny Default Judgment**

KWAL also seeks to set aside the Clerk's Entry of Default pursuant to Fed. R. Civ. P. 55(c). Under Rule 55(c), the Court may set aside an entry of default for "good cause."[31] While the "good cause" standard for setting aside an entry of default under Rule 55(c) is more liberally applied than the "excusable neglect" standard for setting aside a judgment under Fed. R. Civ. P. 60(b), the same considerations apply.[32]

The factors to consider in determining whether the good cause standard of Rule 55(c) has been met are: 1) whether the default was the result of culpable conduct of the defendant, 2) whether the plaintiff would be prejudiced if the default would be set aside, and 3) whether the defendant has presented a meritorious defense to plaintiff's claim.[33] "Defendants' conduct is considered culpable if they have defaulted willfully or have no excuse for the default."[34] These

---

[30]*See Maberry v. Said*, No. 94–2416-JWL, 1996 WL 442046, at *3 (D. Kan. July 3, 1996).

[31]Fed. R. Civ. P. 55(c).

[32]*Clinical Reference Lab., Inc. v. Salugen Biosciences, Inc.*, No. 12-2768-KHV, 2013 WL 1816352, at *1 (D. Kan. Apr. 29, 2013). The Court notes that it granted Plaintiff's Third Motion for Default Judgment at the evidentiary hearing on damages, but the Court had not yet entered the judgment when KWAL filed its objection.

[33]*Hunt v. Ford Motor Co.*, 65 F.3d 178 (Table), 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995) (unpub.) (citation omitted).

[34]*Clinical Reference Lab.*, 2013 WL 1816352, at *2 (citing *United States v. Timbers Preserve, Routt Cnty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993)).

factors are not "talismanic" and the court may consider other factors.[35]

KWAL relies on its "excusable neglect" arguments to show good cause under Rule 55(c). For the reasons previously discussed, the Court finds that Plaintiff would be prejudiced if the default were set aside, and KWAL has failed to show a valid excuse for the default.

The Tenth Circuit has noted the tension between enforcing procedural rules and observing fairness in default cases:

> [The Court does not] favor default judgment because the court's power is used to enter and enforce judgments regardless of the merits of the case, purely as a penalty for delays in filing or other procedural errors. However, a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.[36]

Similarly, the Court feels this tension in this case. If KWAL had entered its appearance in the case or even contacted the Court prior to the Court's evidentiary hearing, the Court may have reached a different result. However, under the facts as they stand, the Court cannot find that KWAL met the good cause standard of Rule 55(c).

### C. Plaintiff's Damages

Lastly, KWAL argues that the Court should not award Plaintiff's damages, as requested in her trial brief, because they are too speculative and unclear, noting that "[t]he Tenth Circuit

---

[35]*Id.* at *1 (citations omitted).

[36]*Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983) (internal citations omitted).

has recognized that a summary of purported damages, without evidence to substantiate the value of the damages is largely speculative, excessive, and should not be allowed."[37] However, that is precisely why the Court scheduled the evidentiary hearing on damages. Plaintiff testified and presented evidence at the hearing.

KWAL also argues that Plaintiff settled with PPC for an undisclosed amount, and to the extent Plaintiff seeks full recovery from KWAL, she is seeking double recovery. KWAL asks the Court to offset the amount Plaintiff seeks as damages from KWAL against her settlement amount with PPC so that Plaintiff is not recovering twice for the same alleged damages. KWAL could have made this argument and presented evidence in support if it had appeared at the damages hearing.

At the time of the damages hearing, the posture of the case was such that KWAL was the only remaining defendant. This is a different situation from cases where defaulting defendants have received the benefit of a decision on the merits in favor of a non-defaulting defendant.[38] KWAL was the only remaining defendant, PPC did not receive a judgment on the merits and there was no risk of inconsistent judgments at the time the Court granted Plaintiff's Third Motion for Default Judgment and awarded damages. The award of attorney's fees was adjusted to account for work that was attributable to claims against PPC. In addition, the costs were split to represent half of the filing fee.

**IT IS THEREFORE ORDERED** that Defendant KWAL's objection to entry of default

---

[37]Doc. 37, at 13 (citing *Archer v. Eiland*, 64 Fed. App'x 676, 682 (10th Cir. 2003)).

[38]*See Wilcox v. Raintree Inns of Am., Inc.*, 76 F.3d 394 (Table), 1996 WL 48857 (10th Cir. 1996) (citing *Bastein v. R. Rowland & Co.*, 631 F. Supp. 1554, 1561 (E.D. Mo. 1986), *aff'd*, 815 F.2d 713 (8th Cir. 1987) (citing cases in which *Frow* rule has been extended to grant the benefits of successful motions to dismiss and motions for summary judgment to a defaulting defendant)).

judgment (Doc. 37) is **overruled**.  The Court will enter a separate order granting default judgment.

    **IT IS SO ORDERED**.

Dated: December 17, 2013

                                    S/ Julie A. Robinson

                                    JULIE A. ROBINSON

                                    UNITED STATES DISTRICT JUDGE